Larry COX, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A04–0912–CR–741.

Court of Appeals of Indiana.

Nov. 23, 2010.

Daniel J. Moore, Laszynski & Moore, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Larry Cox appeals his convictions for ten counts of Class A felony child molesting and five counts of Class C felony child molesting. We reverse and remand.

### Issues

The two issues we address are:

I. whether the trial court properly admitted into evidence a recording of a pretrial interview of the victim; and

II. whether there is sufficient evidence to support Cox's convictions.

### Facts

Sometime in 2002, Cox became romantically involved with S.H., and they eventually moved in together. S.H.'s children,

including then three-year-old D.H., also moved in with Cox. In February 2008, Cox and S.H.'s romantic relationship ended. Afterwards, Cox lived across the street from S.H., and he continued to care for D.H. when she was at work. However, Cox and S.H.'s relationship eventually deteriorated to the point that she obtained a restraining order against him. Cox's last contact with D.H. was in the summer of 2008, when D.H. went to Texas without Cox to visit a relative.

When D.H. returned from Texas, he told a cousin that Cox had "raped" him. Tr. p. 110. When this information was relayed to S.H., she contacted the Tippecanoe County Sheriff's Department. This led to an interview of D.H. being scheduled at Heartford House, a child advocacy center where alleged child abuse victims are interviewed. The interview was conducted by Cheri Pruitt, an investigator employed by the Tippecanoe County Prosecutor's Office who has received special training in interviewing children. During the interview, D.H. described multiple acts of molestation against him by Cox, including oral and anal sex. D.H. reported that the last incident occurred in 2008.

On October 3, 2008, the State filed a fifteen-count information against Cox, alleging he committed ten counts of Class A felony child molesting and five counts of Class C felony child molesting against D.H. Before trial, the State filed notice that it intended to introduce, as substantive evidence, the videotaped recording of D.H.'s interview with Pruitt. The trial court conducted a hearing on this request on October 7, 2009. The trial court concluded that the interview was sufficiently reliable to be admitted, but there was no evidence or finding that D.H. would be unable to testify at trial. Cox's jury trial was held on October 20, 2009. The trial court permitted the State to call D.H. to

the stand and ask him whether he understood the difference between a truth and a lie. Then, in lieu of in-court direct examination about the alleged molestations, the State, over objection, was permitted to play the videotaped interview for the jury. Afterwards, D.H. was subject to cross-examination. The jury found Cox guilty as charged, and he was sentenced accordingly. He now appeals.

**Analysis**

### I. Introduction of Videotaped Interview

■ Cox contends the trial court erred in admitting D.H.'s videotaped interview into evidence, when D.H. was present at trial and apparently available to provide live testimony. We review a trial court's evidentiary rulings for an abuse of discretion. *McHenry v. State*, 820 N.E.2d 124, 128 (Ind.2005). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if it misinterprets the law. *Carpenter v. State*, 786 N.E.2d 696, 703 (Ind.2003). Our supreme court also has observed that the Protected Person Statute ("PPS"), under which the trial court here admitted the videotape, "impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them . . . 'a special level of judicial responsibility.'" *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind.1999)). However, errors in the admission of evidence will be disregarded as harmless unless they affect a party's substantial rights. *Camm v. State*, 908 N.E.2d 215, 228 (Ind.2009) (citing Ind. Trial Rule 61).

The PPS states in part:

(d) A statement or videotape that:

(1) is made by a person who at the time of trial is a protected person;

(2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for [certain enumerated offenses, including child molesting] if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.

(ii) The protected person cannot participate in the trial for medical reasons.

(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

(f) If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1) at the hearing described in subsection (e)(1); or

(2) when the statement or videotape was made.

Ind.Code § 35–37–4–6. Children younger than fourteen are included within the definition of "protected person." I.C. § 35–37–4–6(c)(1).

Our supreme court thoroughly addressed the PPS in *Tyler v. State*, 903 N.E.2d 463 (Ind.2009). The ultimate holding of that case is that "testimony of a protected person may be presented in open court or by prerecorded statement through the PPS, but not both except as authorized by the Rules of Evidence." *Tyler*, 903 N.E.2d at 467. The State and trial court here believed they complied with the letter of *Tyler* by introducing D.H.'s videotaped interview, not permitting him to give direct testimony on the stand, and allowing defense counsel to cross-examine him at trial.

■ It is debatable whether the procedure employed here complied with the letter of *Tyler*; *Tyler* expressly prohibits the introduction of both a prerecorded statement and "testimony" of a protected person. It does not limit the prohibition to direct testimony relating facts of the charged crime. Here, D.H. did testify at trial, both during a brief direct examination and on cross examination, and his prerecorded statement was introduced into evidence.

Nevertheless, even if we were to conclude the procedure employed here did not directly violate the letter of *Tyler*, it violated its spirit and the general principles announced in that opinion. *Tyler* states unequivocally, "[b]ecause the PPS represents a departure from ordinary trial procedure, it should be used only when necessary to further its basic purpose of avoiding further injury to the protected person." *Id.* at 466. The court noted that the PPS balances the consideration of sparing children the trauma of testifying in open court against the defendant's right to a fair trial, as embodied in part in the Confrontation Clause of the Sixth Amendment and article 1, section 13 of the Indiana Constitution, as well as the policies underlying the hearsay rule.[1] *Id.*

The court went on to state:

> We believe that admitting consistent statements through both prerecorded media and also by live testimony presents two problems aside from confrontation clause or hearsay issues. First, admitting both a child's live testimony and consistent videotaped statements is cumulative evidence, and can be unfairly prejudicial. Second, if a child or other protected person is sufficiently mature and reliable to testify in open court without serious emotional distress, resort to the PPS is unnecessary. And if the person testifies live, admitting the additional earlier statement does not serve the statutory purpose of protecting the child from the burden of testifying. . . .

> If the person is able to testify live without serious emotional distress such that the protected person cannot reasonably communicate, that is clearly preferable.

*Id.* at 466–67 (citations and footnote omitted). *See also id.* at 471 (Dickson, J., concurring) ("If a child is sufficiently mature to testify in open court, resort to the Protected Person Statute exception is unnecessary and unfair.").

[3] Of course, the procedure employed by the trial court here did not raise the specter of unfairly prejudicial cumulative evidence bolstering the in-court testimony of an alleged molestation victim. Still, our system of justice clearly prefers live, in-court testimony given under oath, as evidenced in part by the Confrontation Clause and the hearsay rule. Furthermore, our supreme court in *Tyler* and other cases, such as *Carpenter* and *Cox*, has evinced its "clear" preference for live testimony and substantial reluctance with utilizing the PPS to bypass the traditional rules of evidence, unless there is evidence that the child will suffer serious emotional distress by testifying. On that issue, our supreme court has noted the procedure provided by the PPS for finding the potential existence of such distress. *See id.* at 467 n. 2 (citing. I.C. § 35–37–4–6(e)(2)(B)(i)). The statute provides that a psychiatrist, physician, or psychologist must present evidence regarding the potential for serious emotional harm to the protected person that testifying would

---

1. The Confrontation Clause would not have been violated here because D.H. was available for in-court cross-examination regarding the videotape. *See Fowler v. State,* 829 N.E.2d 459, 464 (Ind.2005), *cert. denied.* It is not clear that the hearsay rule would have permitted introduction of the videotape as substantive evidence, however. Indiana Evidence Rule 801(d)(1)(A) and (B) permit introduction of a prior statement by a live witness only where the statement was given under oath and is inconsistent with trial testimony, or where the statement is consistent with the testimony *and* it is used to rebut a claim of recent fabrication or improper influence or motive. Here, there was no direct testimony by D.H. with which to compare his prior statements. In any event, there is no argument by the State that the videotape would have been admissible under the Rules of Evidence.

cause. A trial court's observations of the child, standing alone, are insufficient to meet the statutory standard of unavailability established by the PPS. *See Howard v. State,* 853 N.E.2d 461, 467–68 (Ind.2006) (holding that even though child witness continually cried on the stand during trial, she was not "unavailable" to testify within the definition of the PPS).

There was no evidence presented that D.H. would meet the PPS's standard for unavailability based on the potential for serious emotional distress that testifying might cause. Indeed, D.H. in fact took the stand at trial and was subject to cross-examination. Thus, the underlying purpose of the PPS—sparing a child the trauma of testifying in court—was not served in this case by the introduction of the videotaped statement. Indeed, resort to the PPS appears to have been unnecessary. We conclude that the trial court erred in permitting introduction of D.H.'s videotaped statement into evidence.

■ We note that in *Tyler,* the court concluded that introduction of the prerecorded statements into evidence was not reversible error because it was merely cumulative of the children's consistent trial testimony. *Tyler,* 903 N.E.2d at 467. Here, there was no trial testimony by D.H. regarding the charged crimes, consistent or otherwise. All of the evidence supporting Cox's convictions came from the videotaped statement. Introduction of that statement removed any possibility that D.H. might make inconsistent statements in live testimony as compared to the statement, and so that potential avenue for defense counsel to attack the veracity of D.H.'s claims was foreclosed. Additionally, we note that the statement was not made under any kind of oath, including an oath appropriate for children. There was,

for example, no examination *before* D.H. gave the statement of whether he appreciated the difference between truths and lies. Thus, there is no sworn testimony or statement supporting Cox's convictions. The trial court's erroneous admission of the videotape cannot be labeled harmless. We reverse Cox's convictions.

## II. Sufficiency of the Evidence

■ We briefly address Cox's argument regarding the sufficiency of the evidence in order to determine whether there is a double jeopardy bar to his retrial.[2] *See Howard,* 853 N.E.2d at 468. When we review the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* When confronted with conflicting evidence, we must consider it in a light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

■■ We note that when gauging the sufficiency of the evidence to support a verdict, we consider all of the evidence presented at trial, including evidence that was erroneously admitted. *Carpenter,* 786 N.E.2d at 705. D.H.'s videotaped statement, although erroneously admitted, was sufficient to support Cox's convictions. *See Howard,* 853 N.E.2d at 468 (holding that although child's deposition was improperly admitted in violation of PPS and Confrontation Clause, it provided sufficient

2. It is unnecessary for us to address Cox's claim that the State improperly presented evidence regarding Cox's pre-arrest, pre-Miranda silence regarding D.H.'s allegations.

evidence to support jury verdict and retrial was not barred by double jeopardy). The statement relates numerous instances of molestation by Cox, sometimes in disturbingly graphic detail. Cox's challenge to the veracity of D.H.'s statement clearly is an invitation to reweigh evidence, which we cannot do. Double jeopardy does not bar Cox's retrial upon remand.

### Conclusion

The trial court improperly permitted the State to introduce D.H.'s videotaped statement in lieu of live direct examination, and that error was not harmless. Cox may be retried, however. We reverse Cox's convictions and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.