In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1869

GREGORY L. PAYNE,

*Petitioner-Appellant,*

*v.*

RICHARD BROWN, Superintendent,
Wabash Valley Correctional Facility,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:09-cv-228-RLY-WGH—**Richard L. Young**, *Chief Judge.*

ARGUED OCTOBER 5, 2011—DECIDED NOVEMBER 10, 2011

Before EASTERBROOK, *Chief Judge*, and MANION and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* When pleading guilty to
four felony charges, Gregory Payne admitted that he
had forcibly detained a 17-year-old boy—threatening to
kill him if he resisted or tried to escape—and raped him
in the anus. Charges that Payne had raped a 13-year-old
boy were dismissed. The state judge sentenced him to

50 years in prison in light of his prior felony convictions. The sentence was affirmed on direct appeal, 838 N.E.2d 503 (Ind. App. 2005), and a collateral attack was rejected, 905 N.E.2d 68 (Ind. App. 2009) (table).

In this federal collateral proceeding under 28 U.S.C. §2254, Payne contends, as he had argued in state court, that he received ineffective assistance of counsel in two respects: his lawyer did not ensure that the plea agreement was reduced to writing, see Ind. Code §35-35-3-3(a), and gave him incorrect advice about the sentence he could receive.

In a hearing in state court, Payne testified that his lawyer had told him that he could not receive more than 20 years' imprisonment, while under Indiana law the actual sentencing range ran from a low of 20 years to a maximum of 86 (if the judge imposed the maximum on all counts and ordered the sentences to be served consecutively). Counsel testified that he could not remember what he had told Payne. Payne may have misunderstood or misrepresented what counsel said. His lawyer argued to the sentencing judge that, as a matter of Indiana law, all four counts merged into a single charge of criminal confinement, the maximum penalty for which is 20 years. The judge rejected this argument, however, holding that criminal confinement is a lesser included offense of deviate sexual conduct, which carries a maximum penalty of 50 years. The judge imposed a 50-year sentence for that crime, plus concurrent sentences on two other charges, while withholding sentence on the criminal-confinement charge. (Because criminal confine-

ment is a lesser included offense, a separate sentence would be appropriate only if the conviction on the greater charge later is set aside.) But because counsel did not remember whether he had told Payne that the maximum *is* 20 years, or only that he would try to persuade the judge of this, the parties have assumed that Payne's professed understanding is correct.

After the hearing, the state judge declined to set aside the plea, concluding that Payne had not suffered prejudice because the correct sentencing options had been stated in open court. The judge ordered resentencing because of a different problem: the plea agreement included a pledge by the prosecutor not to make a recommendation about the appropriate sentence, a pledge that had been broken. After a new proceeding at which the prosecutor stood mute, the state judge again imposed a 50-year sentence, explaining that the prosecutor's recommendation in the original sentencing had not affected his decision.

The state's appellate court affirmed, but with a different explanation for the lack of prejudice. The appellate court concluded that Payne surely would have been convicted, had he stood trial, so that it just didn't matter what his lawyer said or what he believed. The federal district judge denied Payne's petition with the same explanation.

That was a mistake. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985), holds that a person who contends that ineffective assistance of counsel induced him to plead guilty establishes "prejudice" by demonstrating that, but for coun-

sel's errors, he would have insisted on a trial. The state's appellate court relied on *Segura v. State*, 749 N.E.2d 496 (Ind. 2001), and *State v. Van Cleve*, 674 N.E.2d 1293 (Ind. 1996), in which the Supreme Court of Indiana concluded that the Supreme Court of the United States couldn't have meant what it said in *Hill*. Relying in part on *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the state court reasoned that unless a proceeding is fundamentally unfair or unreliable, there cannot be "prejudice" for the purpose of the ineffective-assistance inquiry. And when a person is certain to be convicted at trial, a sentence imposed following a guilty plea—which after all rests on the accused's admission that he committed the crime—must be reliable, the state court decided.

The understanding of *Fretwell* reflected in *Segura* and *Van Cleve* did not survive the decisions in *Williams v. Taylor*, 529 U.S. 362 (2000), and *Glover v. United States*, 531 U.S. 198 (2001), which establish that *Fretwell* must not be understood to change the prejudice inquiry otherwise appropriate under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill*. The situation in *Fretwell* was unusual: a federal court of appeals reached an erroneous decision, which it soon overruled. Fretwell contended that he received ineffective assistance because his lawyer had failed to take advantage of that decision during the window between its announcement and its overruling. The Justices responded that no one suffers a legal injury when the courts apply the correct rule of law. That's what *Fretwell* meant in saying that the defendant had not suffered a fundamentally unfair or unreliable outcome. *Fretwell* did not change the prejudice standard

of *Strickland* (for cases that proceed to trial) or *Hill* (for cases resolved on guilty pleas). We therefore conclude that the state court's decision in Payne's case was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1). *Hill* supplies the rule for identifying "prejudice."

It does not follow, however, that Payne is entitled to relief. Our conclusion does no more than lift the restrictions on collateral review that are part of §2254(d). Relief still depends on a demonstration that Payne is "in custody in violation of the Constitution . . . of the United States." 28 U.S.C. §2254(a). And that means performance so deficient that the defendant did not receive the sort of "counsel" of which the sixth amendment speaks, see *Strickland*, 466 U.S. at 687–88, plus "prejudice" as defined in *Hill*. The parties have assumed that Payne's lawyer erred, but they have not done what *Strickland* requires: they have not analyzed what Payne's lawyer *did* for him. See *Strickland*, 466 U.S. at 690–96, discussed in *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) ("It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one"). Because the lawyers for Indiana have not argued that "the entire course of the defense" shows that Payne was adequately represented, we let this subject pass—but without retreating from our established view that it is rarely proper to examine particular claims of error in isolation.

Payne's observation that the plea agreement was not reduced to writing does not satisfy either the "performance" or the "prejudice" component of *Strickland* and *Hill*. Payne's lawyer and the prosecutor had been negotiating potential plea bargains for some time. Payne had rejected every proposal until the morning when trial was to begin. He changed his mind after the jury had been selected and sworn. Payne told the state judge that he had decided to plead guilty in large measure in order to spare the two juvenile victims the pain of testifying, and himself the embarrassment of having the details spelled out in the courtroom. There wasn't time to prepare a detailed contract—and neither Payne nor the prosecutor asked for a delay so that this could be done. The judge would have been unlikely to grant that request, which would have left the jurors and witnesses cooling their heels for an indefinite period.

The terms of the plea bargain were stated on the record, making a separate writing unnecessary. Payne agreed to plead guilty to all counts relating to the 17-year-old victim; the prosecutor agreed to dismiss all counts relating to the 13-year-old victim and not to make a recommendation about the appropriate sentence. The prosecutor kept the former promise and broke the latter, which was enforced by vacating the initial sentence and providing Payne with a full resentencing. In this court, Payne says that a separate written contract might have contained information about the possible maximum sentences, avoiding the misunderstanding that Payne now says he labored under. Perhaps so; Indiana would be well advised to take steps that prevent collateral

attacks such as the current one, which required an evidentiary hearing in state court and now is before its fourth judicial forum (trial and appellate courts in Indiana, followed by federal district and appellate courts). But the state judge gave Payne exactly the information that he says would have been in a written plea agreement, which means that there was no prejudice—not on either of Payne's theories.

We assume, as the parties have done, that Payne's lawyer told him that the maximum sentence could not exceed 20 years, and not just that he would try to persuade the judge that this was the limit. Attorneys often are more confident of their position than the law warrants; perhaps Payne's lawyer failed to alert his client to the risk that his argument would be rejected. (It was a weak argument; counsel apparently got the rules for lesser included offenses backward and assumed that the greater offense merges into the lesser.) But though Payne received bad advice from his lawyer, he received the correct information from the judge. He could have backed out when he heard the unwelcome news—the lawyers, jury, and witnesses were ready to proceed with trial—but he didn't.

The state judge conducted a thorough interrogation before accepting the guilty plea; it covers 46 pages of transcript. The judge twice informed Payne about possible sentences. The first time, the judge said: "A Class A felony, which is Count IV in the actual information, has what's called a standard term of imprisonment of 30 years." Payne replied: "All right." The judge con-

tinued: "If there are aggravating circumstances in a particular case, the maximum sentence on a Class A felony is a 50-year term of imprisonment. If there were mitigating circumstances, the minimum sentence on a Class A is a 20-year term of imprisonment." Payne said: "Right." These brief replies do not suggest that Payne was sleepwalking through the hearing; he frequently asked the judge for more information or inquired about what would happen next, and he sometimes volunteered information. But when the judge said that the "standard" sentence on one count alone could be 30 years, with a maximum of 50 years, Payne acknowledged the information without suggesting that it contradicted his expectations.

Ten transcript pages later, the judge returned to the subject of the potential sentence. The judge told Payne that, after a guilty plea to four charges, there could be four separate sentences, and that he could make these sentences consecutive. The judge told Payne that this means "one after the other." Payne said: "Right; right." The judge added: "Or I can run them concurrently, which is at the same time." Payne: "Right." Thus Payne knew that the maximum time in prison could exceed 50 years; he acknowledged the information without claiming to have a contrary understanding. A defendant's statements made in open court control over later, contradictory contentions. See, e.g., *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). No one can get collateral relief by insisting that his earlier statements to a judge were false—certainly not after a court has held a hearing and decided that the statements made at the time of the plea were true.

Payne observes that the judge did not ask him whether he had any beliefs or expectations that induced him to plead guilty. Such a question might have elicited a reply related to the sentence, even though the judge's advice about maximum and consecutive sentences did not. We grant the possibility. Judges who take guilty pleas can forestall collateral attacks such as this—proceedings that can be hard to resolve because defendants may misunderstand or misrepresent oral advice, and attorneys may be unable to remember years later what they said—by asking the defendant to narrate in his own words what he understands or expects will happen. See *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). But the trial judge here did ask a closely related question: he asked Payne why he was pleading guilty. Payne might have replied "because my sentence can't exceed 20 years." But he didn't. What he actually said was that "I really want to have the plea accepted [s]o we can get it over with, and we ain't got to drag these people into court. It's all really embarrassing, each way. And we just don't need to make a mockery out of it or just make a mess out of it. . . . I just wish to just go ahead and take a plea and hope that the Court won't at least kill me with time. And we ain't got to drag these guys [the victims] into court and make them put their business up and, you know, just embarrass them."

This statement not only provides a reason unrelated to a belief that the maximum term is 20 years but also implies that Payne did not have such a belief. He said that he hoped that "the Court won't . . . kill me with time." That's very different from his currently professed belief

that the judge *could not* sentence him to more than 20 years. What happened at sentencing fortifies the inference that Payne knew that the maximum was well over 20 years. When the judge pronounced a 50-year sentence, Payne stood silent. He did not protest or ask to withdraw his plea. He did not use allocution to proclaim a belief that 20 years was the maximum. Soon after sentencing, he *did* protest the 50-year sentence on the ground that the prosecutor had made a recommendation. The state judge vacated the sentence and started from scratch. At the second proceeding, Payne *again* did not use allocution to tell the judge that he thought 20 years the maximum, and when the judge re-imposed a 50-year sentence, Payne *again* did not protest or ask to withdraw his plea. That motion came two weeks later—a curious delay if Payne had then the belief he now claims to have had.

According to Payne, however, this inference that he knew what penalties were possible is unsound because he had turned down plea offers that would have produced a sentence as low as 30 years. Why reject 30 years only to enter a plea that led to a sentence of 50 years? Payne's current lawyers ask us to answer that question by concluding that Payne must have believed that the maximum sentence was lower than 30 years. That's not necessarily so, however. The state judge told him that his sentence could be as low as 20 years; perhaps Payne hoped for that outcome, which would have been better than 30 years with certainty. Or perhaps the approach of trial concentrated the mind, and Payne was honest when he told the judge that he wanted to avoid embar-

rassing the victims (and himself) at trial. It is unnecessary to decide why Payne turned down the 30-year offer only to enter a plea that lacked a cap on the sentence. The record shows us that Payne knew that his time in prison could be 50 years (or more with consecutive sentences). No more is necessary to show that the judgment must be

AFFIRMED.