Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2014, 9:47 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**JACK E. PRIMMER**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACK E. PRIMMER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1308-PC-394 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT 5
The Honorable Les A. Meade, Judge
Cause No. 70D05-1304-PC-1

**November 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jack E. Primmer ("Primmer") filed a petition for post-conviction relief in Tippecanoe Superior Court, which the court denied. Primmer appeals *pro se* and presents three issues for our review, which we restate as:

I. Whether Primmer was provided with the ineffective assistance of trial counsel;

II. Whether Primmer's rights under the Fourth and Fifth Amendments to the United States Constitution were violated; and

III. Whether the prosecuting attorney committed misconduct.

We affirm.

**Facts and Procedural History**

At the time relevant to this appeal, Primmer was a convicted sex offender who had been released on parole in November 2004.[1] The terms of Primmer's parole included a prohibition against contact with children. Nevertheless, Primmer began a relationship with C.B., who had four young sons. One of these sons, eleven-year-old J.B., had a learning disability. At one point, Primmer was helping J.B. with a bath and inappropriately touched J.B. Specifically, Primmer later admitted that he had "washed [J.B.] a little too long." Appellant's App. pp. 37-38. On another occasion, Primmer fondled J.B.'s penis when the boy was in bed with Primmer. Primmer later admitted that he was sexually aroused by these incidents.

---

[1] Primmer had been convicted of child molesting after touching a boy's penis.

[2] Heartford House is "a child advocacy center where alleged child abuse victims are interviewed." Cox v. State, 937 N.E.2d 874, 876 (Ind. Ct. App. 2010).

[3] This section provides in relevant part that "The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years." I.C. § 35-50-2-14(f). Because Primmer was

Primmer's behavior toward J.B. was eventually reported to the authorities. As a result, J.B. was interviewed at home by a caseworker for the Department of Child Services. J.B. told the caseworker that he did not like it when Primmer took showers with him. The caseworker then set up another interview with J.B. at Heartford House,[2] and J.B. was interviewed by an investigator from the prosecutor's office. During this interview, J.B. stated that Primmer had touched his penis when the two were in bed.

As a result of these interviews, two detectives from the Lafayette Police Department went to Primmer's place of employment to speak with him. Primmer told the detectives that he knew they wanted to talk with him and had planned to go to the police station after work. The detectives indicated that they preferred to speak with Primmer then and offered him a ride to the police station. Primmer declined and drove himself to the police station.

During the first portion of the interview, the detectives told Primmer that he was free to leave, and Primmer acknowledged that he was there voluntarily. Primmer stated that J.B. was like a son to him and generally denied touching J.B. improperly. He admitted that he had helped J.B. bathe and had showered with him once to help wash J.B.'s hair. He also admitted that J.B. had gotten into his bed one night, but denied intentionally touching J.B.'s penis. When Primmer indicated that he needed to go back to work, the detectives ended the interview. In the meantime however, Primmer's parole officer had secured a warrant for Primmer's arrest for violating the terms of his parole.

---

[2] Heartford House is "a child advocacy center where alleged child abuse victims are interviewed." Cox v. State, 937 N.E.2d 874, 876 (Ind. Ct. App. 2010).

3

As Primmer was leaving, but before he actually left the police station, his parole officer took him into custody. Primmer then asked to speak with his parole officer alone, and the detectives left the room. Primmer admitted to his parole officer that he had washed J.B.'s penis "for a prolonged period," and admitted to fondling J.B.'s penis in bed.

The parole officer then informed the detectives that Primmer had made incriminating statements, at which point they advised Primmer of his Miranda rights. Primmer acknowledged his rights and signed a waiver-of-rights form. During this second portion of the interview, Primmer admitted to fondling J.B.'s penis over his underwear when J.B. was in Primmer's bed and also admitted that he "washed [J.B.] a little too long with a [wash] rag." Appellant's App. p. 37.

On April 22, 2005, the State filed charges against Primmer for child molesting and for being a repeat sexual offender. The State later moved to add an additional charge of child molesting and a charge of obstruction of justice. Primmer was represented during the trial phase by private counsel. Prior to trial, Primmer's trial counsel filed a motion to suppress Primmer's statements to the police, but the trial court denied the motion. Also prior to trial, the trial court conducted a child hearsay hearing. At this hearing, J.B. testified that he had told the truth to the investigators at Heartford House and indicated that he knew the difference between the truth and a lie. The prosecutor also indicated that J.B. was prepared to testify at trial.

As explained in our opinion on Primmer's direct appeal, the following events then occurred:

4

On February 6, 2006, the day before Primmer's jury trial was to be held, Primmer entered into a plea agreement under which he was to plead guilty to child molesting and to being a repeat sexual offender in exchange for an agreement that the executed portion of his sentence for these two charges would not exceed nine years. However, at the plea agreement hearing, the following exchange took place:

> By the Court: Has anybody forced or threatened to place you or anybody else in fear to get you to plead guilty today?
>
> By Mr. Primmer: Your Honor, uh, I believe another person was placed in fear to get me to sign the Plea Agreement, Your Honor.
>
> By the Court: Who, who put you in fear?
>
> By Mr. Primmer: Uh, no, it was not me that was put in fear. It was another person.
>
> By the Court: I'm asking you, has anybody put you in fear, and you say no—
>
> By Mr. Primmer: In a sense, yes, they have, sir.

Transcript at 97-98. The trial court then stopped the hearing and ordered that the case proceed to trial the following day. The next day, Primmer entered into another plea agreement under which he was to plead guilty to child molesting and to being a repeat sexual offender, this time in exchange for an agreement that the executed portion of his sentence would not exceed twelve years. The trial court held another plea agreement hearing, at which Primmer indicated that no one was put into fear in order to convince him to plead guilty. Primmer stated:

> Yesterday was just a confusing day. It just happened all so quick. I'm sorry it had to come down to twelve years, but it was just, it happened too quick and I didn't have a chance to ... talk to my family or anything about it.

Tr. at 102. The trial court accepted Primmer's plea and scheduled a sentencing hearing.

Prior to the sentencing hearing, Primmer sent the trial court a letter indicating he had not in fact committed the crimes to which he had pled guilty. Primmer stated he pled guilty because the State had coerced the child whom Primmer was accused of molesting and the child's mother into agreeing to testify falsely against Primmer, and he did not want them to have to go through the experience of lying on the stand. At the sentencing hearing, Primmer again proclaimed his innocence stating:

> "I signed the Plea Agreement because of harassment and threats made against [the mother and child] by the prosecution and the

5

> people working for her. That's why I signed the Plea Agreement, Your Honor. I did not commit this crime. I signed the Plea Agreement because my father told me to to [sic] get it over with and to keep [the mother and child] from having—pardon my expression—the hell harassed out of 'em like they have been this past year, Your Honor."

> Tr. at 121. Primmer later stated, "I mean I don't, I really don't think this is fair, Your Honor, because, like I said, I didn't commit this crime," and that "I know I pled guilty, Your Honor. And I've explained why I've pled guilty." Id. at 123.

> The trial court then sentenced Primmer to the statutory maximum of eight years for Class C felony child molesting. The trial court sentenced Primmer to an additional ten years pursuant to the repeat sexual offender statute. Of the aggregate eighteen-year sentence, the trial court suspended six years and ordered that Primmer serve twelve years.

Primmer v. State, 857 N.E.2d 11, 13-14 (Ind. Ct. App. 2006) (footnotes omitted).

On appeal, Primmer claimed that the trial court should have treated his statements at the sentencing hearing as a motion to withdraw his guilty plea and should have granted that motion. Noting that Primmer never filed a motion, much less a written, verified motion, to withdraw his guilty plea, we held that the trial court did not abuse its discretion in not withdrawing Primmer's guilty plea before sentencing. Id. at 15. We also noted that, to the extent that Primmer's arguments attacked the voluntariness of his plea, this issue was not available on direct appeal and should instead be presented in a petition for post-conviction relief. See id. (citing Jones v. State, 675 N.E.2d 1084, 1090 (Ind. 1996)).

With regard to Primmer's appeal of his sentence, we first noted that the trial court did not abuse its discretion in failing to consider Primmer's guilty plea as a significant

6

mitigating factor.  Id. at 16-17.  However, we also held that the trial court had imposed an

improper sentence enhancement under the repeat sexual offender statute:

> At the sentencing hearing, the prosecutor incorrectly informed the court
> that the maximum penalty allowed for the repeat sexual offender
> enhancement was twelve years.  Tr. at 175.  The trial court stated at the
> sentencing hearing that it would sentence Primmer to twelve years for the
> enhancement.  Tr. at 207.  Before the trial court issued its sentencing order,
> it apparently reconsidered, and instead sentenced Primmer to ten years
> under the enhancement.  The repeat sexual offender statute authorizes
> neither the twelve-year sentence identified at the sentencing hearing nor the
> ten-year sentence actually imposed.  Therefore, Primmer's sentence is
> illegal.

Id. at 18 (footnotes omitted).  We remanded with instructions that the trial court impose

the sentence enhancement authorized by statute, i.e. four years.  Id. (citing Ind. Code §

35-50-2-14).[3]

On May 5, 2009, Primmer filed a *pro se* motion for post-conviction relief.  The

post-conviction court held a hearing on Primmer's petition on September 25, 2012.

Although Primmer failed to subpoena any witnesses, Primmer's trial counsel and the

investigating detectives did appear and testify.  The post-conviction court issued findings

of fact and conclusions of law denying Primmer's petition on July 18, 2013.  Primmer

now appeals.

### Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted

persons can raise issues they failed to raise at trial or on direct appeal.  McCary v. State,

---

[3] This section provides in relevant part that "The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense.  However, the additional sentence may not exceed ten (10) years."  I.C. § 35-50-2-14(f).  Because Primmer was convicted of a Class C felony, the proper sentence enhancement was four years—the advisory sentence for a Class C felony.  See Ind. Code § 35-50-2-6.

761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

### I. Ineffective Assistance of Trial Counsel

Primmer claims that the post-conviction court clearly erred in determining that his trial counsel was not ineffective. In Timberlake v. State, 753 N.E.2d 591 (Ind. 2001), our

8

supreme court summarized the law regarding claims of ineffective assistance of trial counsel, writing:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

Id. at 603 (Ind. 2001) (citations and quotations omitted).

Claims of ineffective assistance of trial counsel following a guilty plea require more specific considerations. With regard to guilty pleas, there are two general types of claims of ineffective assistance of trial counsel: (1) the failure to advise the defendant on an issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. Manzano v. State, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), trans. denied

(citing Segura v. State, 749 N.E.2d 496, 500 (Ind. 2001). In Segura, our supreme court

wrote:

> We conclude that Hill [v. Lockhart, 474 U.S. 52 (1985)] standing alone requires a showing of a reasonable probability of success at trial if the alleged error is one that would have affected a defense. This result seems preferable for several reasons. In [State v.] Van Cleave, [674 N.E.2d 1293 (Ind. 1996),] we identified sound reasons for requiring that a petitioner who pleads guilty show a reasonable probability of acquittal in order to prevail in a postconviction attack on the conviction based on a claim of ineffective assistance of counsel. As Hill emphasized, the State has an interest in the finality of guilty pleas. This is in part grounded in the cost of a new trial, and the demands on judicial resources that are imposed by revisiting the guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later.

Segura, 749 N.E.2d at 503 (citations omitted).

Therefore, our supreme court concluded that "[a] new trial is of course necessary

if an unreliable plea has been accepted. But its costs should not be imposed needlessly,

and that would be the result if the petitioner cannot show a reasonable probability that the

ultimate result—conviction—would not have occurred despite counsel's error as to a

defense." Id.[4]

It is important to note that the decision to enter a guilty plea is largely the

defendant's decision, and is therefore different from the tactical or investigatory steps

that are the bases of most claims of ineffective assistance of counsel. Manzano, 12

N.E.3d at 326. Indeed, "'[t]he guilty plea, virtually uniquely among all procedural steps,

---

[4] As we noted in Manzano, the federal Seventh Circuit Court of Appeals disagrees with our supreme court's interpretation of Hill, and concluded that "a person who contends that ineffective assistance of counsel induced him to plead guilty establishes 'prejudice' by demonstrating that, but for counsel's errors, he would have insisted on a trial." Manzano, 12 N.E.3d at 326 n.1 (citing Payne v. Brown, 662 F.3d 825, 828 (7th Cir. 2011)). Because the Seventh Circuit's decisions on federal law are not binding on us, we apply the standard established by our supreme court in Segura. Id. (citing Jackson v. State, 830 N.E.2d 920, 921 (Ind. Ct. App. 2005)).

involves the judgment of the defendant as well as his attorney[.]'" Id. at 326-27 (quoting

State v. Van Cleave, 674 N.E.2d 1293, 1301 (Ind. 1996)).

> [T]he decision to plead is often strongly if not overwhelmingly influenced by the attorney's advice.  But it is equally true that the defendant appreciates the significance of the plea and is uniquely able to evaluate its factual accuracy.  The requirement that the court satisfy itself as to the factual basis for the plea is designed to ensure that only guilty defendants plead guilty, and also that the defendant's decision to waive a jury trial is an informed and reflective one.  Many decisions at trial—calling a given witness, asserting a defense, or the extent of cross-examination—are difficult if not impossible for the defendant to make, and reliance on counsel is unavoidable.  In contrast, the decision whether to plead guilty is ultimately the prerogative of the defendant, and the defendant alone.  More than conjecture or hope for a lucky break at trial should be required to upset that action years later.

Van Cleave, 674 N.E.2d at 1301.  We therefore focus our analysis on whether there is a

reasonable probability that Primmer would have succeeded at trial.  See Manzano, 12

N.E.3d at 327.

A.  *Child Hearsay Hearing*

Primmer first claims that his trial counsel performed deficiently at the child

hearsay hearing.  Indiana Code section 35-37-4-6, known as the "protected person statute"

or the "child hearsay statute," provides a list of certain conditions under which evidence

that would otherwise be inadmissible will be allowed in cases involving certain crimes,

including child molesting, committed against "protected persons."  J.A. v. State, 904

N.E.2d 250, 255 (Ind. Ct. App. 2009).  This statute provides that a statement or videotape

that: (1) is made by a person who at the time of trial is a protected person; (2) concerns an

act that is a material element of certain listed offenses, which includes child molesting,

that was allegedly committed against the person; and (3) is not otherwise admissible into

11

evidence, is admissible into evidence at trial if certain requirements are met. J.A. v. State, 904 N.E.2d 250, 255-56 (Ind. Ct. App. 2009) (citing I.C. § 35-37-4-6(d)). Among these conditions are that the protected person testifies at trial and that the "time, content, and circumstances of the statement or videotape provide sufficient indicia of reliability." I.C. § 35-37-4-6(e). Factors to be considered in the reliability determination include the time and circumstances of the statement, whether there was a significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age-appropriate terminology, spontaneity, and repetition. J.A., 904 N.E.2d at 256.

In the present case, Primmer claims that his trial counsel performed deficiently at the child custody hearing by failing to point out certain issues with J.B.'s out-of-court statements. Primmer notes that during two interviews with J.B. conducted by his trial counsel, J.B. denied that Primmer had touched him, contradicting his earlier allegations. He also notes that, during the interview at Heartford House, J.B. referred to the person who had touched him only as "Jack," and did not identify him as Jack Primmer. Primmer also claims that J.B.'s statements during the interview at Heartford House indicated that the fondling took place at a time when Primmer was still in prison. Primmer claims that his trial counsel should have focused on these inconsistencies in attacking the reliability of J.B.'s out-of-court statements.

Primmer, however, fails to explain how these facts would have resulted in the trial court excluding J.B.'s statements at trial. First, the trial court was informed at the child hearsay hearing that J.B. had made statements where he denied that Primmer had inappropriately touched him. See Appellant's App. pp. 271-72. The State also presented

12

testimony that children often have difficulty recalling the precise time when certain events occurred. Id. at 279. We cannot say that, had Primmer's counsel acted differently, the trial court would have excluded J.B.'s out-of-court statements.

More importantly, the State indicated that it would call J.B. as a witness at trial. Accordingly, even if Primmer's trial counsel had managed to convince the trial court to exclude the out-of-court statements under the child hearsay statute, J.B. would have still been able to testify at trial with regard to Primmer's touching. Thus, Primmer has not shown that, but for his counsel's alleged errors, the result of a trial would have resulted in acquittal.

B. *Suppression of Primmer's Confession*

Primmer also claims that his trial counsel performed deficiently by failing to have his confession to the police suppressed. We first note that Primmer's trial counsel did move to suppress the statements Primmer had made to the police. And the trial court's ruling thereon was not challenged on direct appeal. Primmer may not now directly attack the trial court's ruling in a petition for post-conviction relief. See McCary, 761 N.E.2d at 391; Davidson, 763 N.E.2d at 443.

Primmer claims, however, that his trial counsel should have made certain, allegedly more convincing arguments in support of the motion to suppress. Primmer has not provided us with a copy of the motion to suppress filed by his trial counsel; accordingly, we cannot say what arguments his trial counsel did or did not make in support of the motion. The transcript of the suppression hearing is in the record before us, and it indicates that Primmer's trial counsel cross-examined the interrogating officers and

13

elicited testimony from the interrogating officers that Primmer was in a location that was not accessible to the public, that the police were wearing firearms during the interview, and that Primmer was arrested once his parole officer arrived—facts supportive of Primmer's argument that he was in custody at the time of the first portion of the interview prior to his arrest. Under these facts and circumstances, we cannot say that Primmer's trial counsel's performance was deficient.

And based on the circumstances surrounding the first portion of the interrogation, we cannot say that the trial court erred in determining that Primmer was not in custody for Miranda purposes. The detectives went to Primmer's place of employment and asked if he would speak with them. Primmer claims that he had no choice but to go, but he admits that the detectives simply stated that they would "like to talk to you right now." Appellant's App. p. 282. We cannot say that this amounts to a command that Primmer had to follow.

And Primmer was allowed to drive himself to the police station. He was also informed that he was free to leave at any time, that he was not under arrest, and that he did not have to talk to the detectives if he did not desire to do so. Appellant's App. p. 11. Under similar circumstances, we have held that a suspect was not in custody. See Laster v. State, 918 N.E.2d 428, 433-34 (Ind. Ct. App. 2009) (holding that defendant was not in custody where police approached defendant at home, informed him that they needed to speak with him regarding an investigation, but did not reveal what the investigation was about, gave him the option of driving himself to the police station, informed him that he was not under arrest and was free to leave, and defendant was allowed to leave at the end

14

of the interview); Faris v. State, 901 N.E.2d 1123 (Ind. Ct. App. 2009) (holding that defendant was not in custody when he went to a police station for an interview regarding an alleged molestation, was questioned by two officers for no more than two hours, was never told that he was under arrest, and, as promised, was permitted to go home after the interview was finished); see also Luna v. State, 788 N.E.2d 832, 834 (Ind. 2003) (holding that a person who goes voluntarily for a police interview, receives assurances that he is not under arrest, and leaves after the interview is complete is not in custody simply by virtue of an energetic interrogation).

Primmer claims that he was in custody because, he claims, he was not allowed to leave and was arrested after the first portion of the interview was completed. The detectives, however, testified that Primmer was free to leave and did not corroborate Primmer's claims that he was not allowed to leave. See Appellant's App. pp. 287, 293. Moreover, Primmer was not arrested by the interrogating detectives, and was instead on his way out of the police station when he was arrested by his recently-arrived parole officer.

Even if Primmer had been in custody during the first portion of his interview, the statements he made during this portion of the interview were not incriminating. Although he admitted that he helped J.B. shower or bathe and that J.B. had been in his bed, Primmer adamantly denied touching J.B. in an improper manner. Thus, even if Primmer had been in custody at the time of the first interview, and therefore should have been advised of his Miranda rights, very little useful information was gathered by the State during that interview. Primmer fails to adequately explain how suppression of this

15

portion of his statement to the police would have resulted in an acquittal had he gone to trial.

With regard to the second portion of the interview, Primmer claims that he had already confessed to his parole officer prior to being advised of his Miranda rights. But Primmer's parole officer testified that, upon being arrested, Primmer asked to talk to him alone and readily admitted to fondling J.B. There is no indication that Primmer confessed as a result of being interrogated by the parole officer. See Appellant's App. pp. 297-98. When the detectives were called back into the office, they advised Primmer of his Miranda rights, and Primmer signed a waiver of his rights. Primmer then admitted to the detectives that he had fondled J.B.

Primmer's contrary accounts of the interrogation were obviously not credited by either the trial court or the post-conviction court, and we cannot reassess the credibility of these witnesses on appeal. Despite these facts, Primmer's trial counsel still sought to suppress Primmer's statement to the police, albeit unsuccessfully. And Primmer has not persuaded us that his trial counsel could have successfully argued otherwise. Primmer has therefore not established that, but for his counsel's allegedly-deficient performance, he would have been successful had he gone to trial.

In short, Primmer has not convinced us that the post-conviction court clearly erred in concluding that Primmer was denied the effective assistance of trial counsel.

## II. Violation of Fourth and Fifth Amendment

Primmer also makes broad, unsupported arguments that his rights secured by the Fourth and Fifth Amendments to the United States Constitution were violated. With

16

regard to the Fourth Amendment, he claims that his rights were violated because he was not allowed to go outside to smoke or go to the bathroom without an escort while he was at the police station. First, Primmer does not support these claims with any citation to authority or cogent argument, and has therefore waived these claims. See Davis v. State, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (concluding that defendant's argument was waived where he cited no authority in support of his position); Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").[5]

Primmer's claims regarding the Fifth Amendment are little more than a summary of his complaint regarding the admissibility of his statement to the police, which we addressed above. And to the extent that Primmer attempts to present these arguments as free-standing claims of fundamental error as opposed to claims of ineffective assistance of trial counsel, this is improper in a petition for post-conviction. Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002).

### III. Prosecutorial Misconduct

Lastly, Primmer claims that the prosecutor committed misconduct during his sentencing hearing by incorrectly stating the law regarding his repeat sexual offender

---

[5] We recognize that Primmer is proceeding *pro se*, and we have endeavored to address the issues he presents on the merits. But pro se litigants are held to the same standards as licensed attorneys. Whatley v. State, 937 N.E.2d 1238, 1240 (Ind. Ct. App. 2010). Accordingly, we will not and may not become advocates for Primmer by attempting to make his arguments for him.

17

sentence enhancement.[6]  As noted above, the prosecuting attorney informed the trial court that Primmer was subject to a sentence enhancement of twelve years.  As we noted in Primmer's direct appeal, this was incorrect as the prosecuting attorney appeared to confuse the repeat sexual offender enhancement with the general habitual offender enhancement.  Primmer, 857 N.E.2d at 18 n.7.  The actual sentence enhancement was four years. See id.

Again, however, Primmer presents this argument as a free-standing claim of fundamental error, not one of ineffective assistance of trial or appellate counsel.  As noted above, for over a decade, our supreme court has held that even claims of fundamental error are not reviewable in post-conviction proceedings when presented as free-standing claims of error.  See Sanders, 765 N.E.2d at 592 ("it [is] wrong to review [a] fundamental error claim in a post-conviction proceeding.").  "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." Id. (citing Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997)); see also Conner v. State, 829 N.E.2d 21, 25 (Ind. 2005) (holding that where petitioner made no claim that his claim was not known or available to him in prior proceedings, his claim that he could present claim of fundamental error in successive post-conviction petition was "simply wrong.").

---

[6] Primmer also argues that the prosecuting attorney made misleading or false statements at a hearing on his motion to modify his sentence.  However, Primmer provides us with no indication that he appealed the denial of his motion to modify his sentence, and cannot use a petition for post-conviction relief as a substitute for direct appeal of the denial of his motion.  And as explained infra, Primmer may not bring a free-standing claim of prosecutorial misconduct in a post-conviction petition.

Here, Primmer presents his claims of prosecutorial misconduct as free-standing claims and does not explain how his claims were "demonstrably unavailable" to him on direct appeal. His free-standing claims of prosecutorial misconduct are therefore not cognizable in a petition for post-conviction relief. See Sanders, 765 N.E.2d at 592.

## Conclusion

The post-conviction court did not clearly err in concluding that Primmer was not denied the effective assistance of trial counsel. And Primmer's other claims are not cognizable in a petition for post-conviction relief. Accordingly, the post-conviction court did not clearly err in denying Primmer's petition for post-conviction relief.

Affirmed.

RILEY, J., and CRONE, J., concur.