# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**CYNTHIA M. CARTER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JUAN MANZANO,                          )
                                       )
    Appellant-Petitioner,              )
                                       )
      vs.                           )    No. 48A02-1310-PC-905
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Respondent.               )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis Carroll, Judge
Cause No. 48D01-9609-CF-208

**July 15, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

In 1997, in Madison Circuit Court, Juan Manzano ("Manzano") pleaded guilty to and was convicted of Class A felony rape and ordered to serve fifty years executed in the Department of Correction. Manzano has now filed a petition for post-conviction relief arguing that his trial counsel and appellate counsel were ineffective. The post-conviction court denied his petition, and Manzano appeals.

Concluding that Manzano did not receive ineffective assistance of trial or appellate counsel, we affirm.

**Facts and Procedural History**

On September 14, 1996, Manzano's now ex-wife left their two children in his care while she worked an overnight shift for her employer. While his six-year-old daughter and four-year-old son were sleeping, Manzano went to several bars with two co-workers and consumed alcohol. When Manzano returned home sometime in the early morning hours on September 14, he removed B.M., his six-year-old daughter, from her bed, removed her clothing and placed the child in his bed. Manzano then raped his daughter. As a result, six-year-old B.M. suffered a tear from the opening of her vagina to the opening of her rectum.

The following morning, after his wife returned home, Manzano went to work at the Red Gold Factory. Shortly thereafter, B.M. appeared in the kitchen with blood on her legs. B.M.'s mother called the police and took B.M. to the emergency room. B.M. had emergency surgery to repair her injury and was hospitalized for several days.

B.M. identified Manzano as her attacker, and Manzano was arrested later that morning. He gave a statement to the police and initially claimed that he did not

remember anything that had happened. However, he stated that if B.M. claimed that he raped her, he must have done so. Manzano later admitted that he attempted to put his penis "inside her vagina" and remembered B.M. saying "no . . . over and over." Appellant's App. pp. 243-45.

On September 16, 1996, Manzano was charged with Class A felony child molesting, Class A felony rape, Class B felony incest, and Class C felony battery. Prior to pleading guilty, Manzano filed a notice of intent to pursue an intoxication defense and a motion to suppress his statement to the police. A suppression hearing was scheduled for April 7, 1997, but on that date, Manzano agreed to plead guilty to Class A felony rape. At the sentencing hearing held on May 5, 1997, the trial court ordered Manzano to serve fifty years executed in the Department of Correction. Our court affirmed his fifty-year sentence on direct appeal. Manzano v. State, No. 48A02-9708-CR-529 (Ind. Ct. App. Jan. 28, 1998).

On February 28, 2006, Manzano filed a pro se petition for post-conviction relief. The State denied the allegations in the petition. Manzano's petition languished until June 8, 2012, when he filed an amended petition. Shortly thereafter, counsel entered an appearance on Manzano's behalf. The post-conviction court held evidentiary hearings on February 25 and April 15, 2013. The court found that Manzano did not receive ineffective assistance of trial and appellate counsel and denied his petition for post-conviction relief. Manzano now appeals. Additional facts will be provided as necessary.

## I. Post–Conviction Standard of Review

3

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd on reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## I. Ineffective Assistance of Trial Counsel

4

Manzano contends that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel. Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

A. *The Ineffective Assistance of Trial Counsel Standard as it Relates to Guilty Plea Proceedings*

Before we address Manzano's specific arguments, it is important to observe that "[t]here are two different types of ineffective assistance of counsel claims that can be

5

made in regards to guilty pleas: (1) failure to advise the defendant on an issue that impairs or overlooks a defense and (2) an incorrect advisement of penal consequences." McCullough v. State, 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013) (citing Segura v. State, 749 N.E.2d 496, 500 (Ind. 2001)); see also Smith v. State, 770 N.E.2d 290, 295 (Ind. 2002). Our supreme court has observed:

> We conclude that Hill [v. Lockhart, 747 U.S. 52 (1985)] standing alone requires a showing of a reasonable probability of success at trial if the alleged error is one that would have affected a defense. This result seems preferable for several reasons. In [State v.] Van Cleave, [674 N.E.2d 1293 (Ind. 1996),] we identified sound reasons for requiring that a petitioner who pleads guilty show a reasonable probability of acquittal in order to prevail in a postconviction attack on the conviction based on a claim of ineffective assistance of counsel. As Hill emphasized, the State has an interest in the finality of guilty pleas. This is in part grounded in the cost of a new trial, and the demands on judicial resources that are imposed by revisiting the guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later.

Segura, 749 N.E.2d at 503 (citations omitted).[1] Therefore, our supreme court concluded that "[a] new trial is of course necessary if an unreliable plea has been accepted. But its costs should not be imposed needlessly, and that would be the result if the petitioner cannot show a reasonable probability that the ultimate result—conviction—would not have occurred despite counsel's error as to a defense." Id.

Importantly, the decision to enter a guilty plea is largely the defendant's decision, and is therefore different from the tactical or investigatory steps that are the bases of most

---

[1] In Payne v. Brown, 662 F.3d 825, 828 (7th Cir. 2011), the Seventh Circuit rejected the Segura holding and concluded that our supreme court misinterpreted the United States Supreme Court's holding in Hill v. Lockhart, 474 U.S. 52 (1985). The Seventh Circuit concluded that Hill "holds that a person who contends that ineffective assistance of counsel induced him to plead guilty establishes 'prejudice' by demonstrating that, but for counsel's errors, he would have insisted on a trial." Id. Because the Seventh Circuit's "decisions on questions of federal law are not binding on state courts," see Jackson v. State, 830 N.E.2d 920, 921 (Ind. Ct. App. 2005), we apply the standard established by our supreme court in Segura.

6

claims of ineffective assistance of counsel. Id. at 503-04. In State v. Van Cleave, our supreme court reasoned:

> Demonstrating prejudice seems particularly appropriate in the context of a claim of ineffective assistance by a defendant who has pleaded guilty. The guilty plea, virtually uniquely among all procedural steps, involves the judgment of the defendant as well as his attorney. . . . [T]he decision to plead is often strongly if not overwhelmingly influenced by the attorney's advice. But it is equally true that the defendant appreciates the significance of the plea and is uniquely able to evaluate its factual accuracy. The requirement that the court satisfy itself as to the factual basis for the plea is designed to ensure that only guilty defendants plead guilty, and also that the defendant's decision to waive a jury trial is an informed and reflective one. Many decisions at trial—calling a given witness, asserting a defense, or the extent of cross-examination—are difficult if not impossible for the defendant to make, and reliance on counsel is unavoidable. In contrast, the decision whether to plead guilty is ultimately the prerogative of the defendant, and the defendant alone. More than conjecture or hope for a lucky break at trial should be required to upset that action years later.

674 N.E.2d at 1301. Likewise, "if the error or omission has the result of overlooking evidence or circumstances that affect the sentence imposed, prejudice is evaluated by the reasonable probability that it had that effect." Segura, 749 N.E.2d at 504. Accordingly, we focus our inquiry on whether there is a reasonable probability that Manzano would have succeeded at trial.

There is little to no probability that Manzano would have prevailed at trial. He did not deny raping his daughter, and B.M. identified him as the perpetrator of the offense. Moreover, given the extensive injury to six-year-old B.M.'s vagina and rectum, Manzano does not dispute the evidence that he penetrated his daughter's vagina with his penis.

B. *Intoxication Defense*

Manzano and his counsel discussed and planned to raise the defense of intoxication at trial. On the date Manzano committed the offense, evidence of voluntary intoxication could be used to negate the requisite mens rea of rape.[2] See Sanchez v. State, 749 N.E.2d 509, 512 (Ind. 2001).

Evidence of Manzano's level of intoxication on the night he raped his daughter is conflicting. Daniel Garza was with Manzano before he raped his daughter and told the police that Manzano consumed numerous alcoholic beverages and that he was drunk. But Garza also stated that Manzano was able to walk without assistance. Trial Record of Proceedings p. 46. When the police officers arrested Manzano on the morning of September 14, 1996, he did not appear to be under the influence of alcohol. The officers administered a breathalyzer test to Manzano, and the results registered a blood alcohol content of zero.

Trial counsel did not believe that Manzano was likely to prevail on an voluntary intoxication defense. We agree. Had Manzano proceeded to trial and argued that the requisite mens rea for the crime of rape was negated by his voluntary intoxication, it is not reasonably probable that he would have succeeded in this defense.

But Manzano also argues that his defense counsel should have also pursued a defense of involuntary intoxication in light of his self-serving claim that he cannot remember committing the offense. Aside from Manzano's claimed lack of recall, there is no evidence in the record that would support a defense of involuntary intoxication. And

---

[2] In 1997, the General Assembly eliminated voluntary intoxication as a defense in prosecution for a criminal offense. See Sanchez, 749 N.E.2d at 513; see also Ind. Code § 35-41-3-5.

8

Manzano admitted to the investigating detective that he attempted to put his penis "inside her vagina" and remembered B.M. saying "no . . . over and over." Appellant's App. pp. 243-45.

C. *Motions to Suppress*

Trial counsel filed a motion to suppress Manzano's statement because the video and transcribed statement did not include a waiver of rights. But after the prosecutor provided trial counsel with a signed copy of Manzano's advisement of rights waiver, trial counsel opined that the motion to suppress would be denied. Trial Record of Proceedings at 113.

Manzano also expresses concern that trial counsel failed to file a motion to suppress evidence obtained during the search of his home and from DNA samples taken from Manzano. And trial counsel allowed Manzano to plead guilty on the date they received the DNA test results from the State. But this evidence is merely cumulative of other evidence that Manzano was the assailant who raped B.M., including B.M.'s identification of her father as the man who raped her. And Manzano has not established lack of consent to search his home or to collect DNA samples, but simply speculates that there may not have been consent.[3] Moreover, Manzano does not argue the likelihood of success of said motions, just that trial counsel was ineffective for failing to file them.

---

[3] Manzano was arrested at his home and does not remember whether he gave police consent to search it. Tr. p. 84.

Manzano also raises other claims concerning alleged "discovery problems" but does not argue how these discovery violations prejudiced him.[4] Manzano argues "[t]rial by surprise is not fair and undermines the way in which the criminal justice system should work." Appellant's Br. at 12. Manzano's claims of surprise concerning DNA results are disingenuous in light of his daughter's accusation and his own admission to the police that he raped his daughter. Again, we observe that Manzano's appellate and reply briefs focus on what trial counsel could have done as a result of the State's alleged discovery violations, but he fails to argue how he was prejudiced as a result. Manzano has not argued that he would have succeeded at trial absent these alleged errors had he not pleaded guilty, and given the circumstances of this case, and as acknowledged by trial counsel, Manzano's likelihood of acquittal was slim to none.

D. *The Sentencing Proceedings*

Finally, Manzano claims that his trial counsel was ineffective for failing "to object to improper aggravating circumstances and his omission in not arguing valid mitigating circumstances." Id. at 12. Manzano argues that "[p]rejudice occurred because Manzano received the maximum sentence; despite the fact he pled open he received the harshest sentence possible." Id.

---

[4] Manzano emphasizes the State's inability to produce an audible and/or transcribed copy of Casimiro Loera's statement, the other co-worker who was drinking with Manzano on the night he raped his daughter. Loera is now deceased. The State also failed to discover and/or disclose to Manzano that Loera had a lengthy criminal history. However, Manzano fails to establish prejudice or that access to Loera's statement would have resulted in acquittal if he had taken the case to trial. Manzano merely speculates that Loera's statement could have supported an involuntary intoxication defense. We again observe that Manzano's claim that he could have possibly raised an involuntary intoxication defense is supported only by his self-serving statement that he cannot remember raping his daughter.

10

However, Manzano does not argue which aggravating circumstances the trial court relied on were allegedly improper. During the sentencing hearing, Manzano's trial counsel argued that the serious bodily injury to B.M. was an element of the offense, so it should not be considered in imposing sentence. Counsel also argued that Manzano's prior criminal record was "mild." Trial Record of Proceedings p. 185. Counsel claimed that Manzano's remorse and cooperation with the police should be considered as mitigating, and counsel appropriately focused much of his argument on the weight to be given to Manzano's guilty plea. Finally, counsel noted Manzano's good behavior while incarcerated during the trial proceedings.

The only mitigating circumstance Manzano specifically argues that counsel failed to raise was that his prolonged incarceration would result in hardship on his family. It is not likely the trial court would have valued this mitigator even if it had been raised because Manzano's family, and most particularly his daughter, were the victims of the offense. And the Class A felony conviction subjected Manzano to, at a minimum, a lengthy twenty-year term of incarceration. See Ind. Code § 35-50-2-4.

Finally, after the guilty plea hearing concluded, the trial court allowed Manzano's ex-wife to give victim impact testimony for the purposes of sentencing because she desired to return to Texas and did not want to make a return trip to Indiana. This was unorthodox and Manzano's counsel failed to object, but again, Manzano has failed to establish prejudice as a result.

E. *Conclusion*

We cannot conclude that Manzano established that he was subjected to ineffective assistance of trial counsel. Under the facts and circumstances of this case, Manzano cannot prove that, absent counsel's alleged errors, there is a reasonable probability that he would have been acquitted if he had proceeded to trial. Finally, although it is generally true that a trial court should not impose a maximum sentence when a defendant pleads guilty, it is evident from the trial record that Manzano's decision to plead guilty was a pragmatic one. Accordingly, Manzano was not subjected to ineffective assistance of trial counsel during the sentencing proceedings because his heinous offense and the horrific injury to his six-year-old daughter supports the maximum sentence imposed.

### III. Ineffective Assistance of Appellate Counsel

Manzano also claims that his appellate counsel was constitutionally ineffective for failing to raise certain issues concerning his sentence. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel: the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. Harris v. State, 861 N.E.2d 1182, 1186 (Ind. 2007).

To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply

the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. Id. If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Id. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Id.

Manzano claims appellate counsel was ineffective for failing to argue that the trial court should have, but failed to consider the following alleged mitigating circumstances: 1) that his incarceration would place undue hardship on his dependents, 2) that he cooperated with the authorities, and 3) that he was remorseful for his crime. We cannot conclude that our court would have concluded that Manzano's sentence was manifestly unreasonable[5] if appellate counsel had argued these mitigating circumstances on appeal.

First, we observe that the trial court did acknowledge and consider Manzano's remorse when it imposed his sentence. Trial Record of Proceedings at 190. Also, the finding of mitigating circumstances is within the trial court's considerable discretion. See Sims v. State, 585 N.E.2d 271, 272 (Ind. 1992). Therefore, had appellate counsel argued the trial court's refusal to find that Manzano's incarceration would place undue

---

[5] Before January 1, 2003, Indiana Appellate Rule 7(B) provided: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The same rule now provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is *inappropriate* in light of the nature of the offense and the character of the offender." (Emphasis added).

hardship on his dependents, it is unlikely that our court would have concluded that the trial court erred under the circumstances of this case where the victim of the rape was his dependent daughter and the Class A felony conviction subjected him to a lengthy twenty to fifty year term of incarceration. See I.C. § 35-50-2-4. Likewise, we cannot conclude that appellate counsel's failure to argue cooperation with the authorities would have been successful on appeal given the heinous nature of Manzano's crime.

Appellate counsel raised the strongest issue available to Manzano on appeal of his sentence: whether Manzano's maximum fifty-year sentence was manifestly unreasonable because he pleaded guilty. Appellate counsel cited to and thoroughly discussed cases wherein our courts have held that a defendant's guilty plea is entitled to substantial mitigating weight. See Ex. Vol., Petitioner's Ex. B, pp. 10-11. Our court considered Manzano's argument and rejected it. Manzano v. State, No. 48A02-9708-CR-529 (Ind. Ct. App. Jan. 28, 1998). After reviewing the trial proceedings and the appellate brief, we conclude that our court would not have reduced Manzano's sentence had appellate counsel raised the arguments discussed above, and therefore, Manzano's appellate counsel was not ineffective.

**Conclusion**

Manzano has not established that he was subjected to ineffective assistance of trial and appellate counsel. We therefore affirm the denial of his petition for post-conviction relief.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.