## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 28 2019, 10:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Charles E. Justise, Sr.
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles E. Justise, Sr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 28, 2019<br><br>Court of Appeals Case No.<br>18A-PC-1420<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1601-PC-3703 |

**Mathias, Judge.**

[1] After his Class A felony child molesting and Class C felony child molesting convictions were affirmed on direct appeal,[1] Charles E. Justise, Sr. ("Justise") filed a petition for post-conviction relief in Marion Superior Court. The post-conviction court denied Justise's petition, and Justise appeals pro se.[2] Concluding that his claim of newly discovered evidence does not warrant a new trial and that his remaining claims are barred by the doctrines of res judicata and waiver, we affirm.

## Facts and Procedural History

[2] In our memorandum decision on Justise's direct appeal, we set forth the facts underlying his conviction as follows:

> On June 21, 2006, twelve-year-old D.B. spent the night at the home of Justise, her father, and Shawna Winston ["Winston"], her father's girlfriend. Justise and D.B. watched a movie, and D.B. fell asleep on a pallet on the floor in an upstairs bedroom. She awoke in the middle of the night when she felt Justise "feeling on her." Tr. p. 63. Justise had pulled up D.B.'s shirt and bra and was touching her breasts with his lips. Justise told D.B. to go downstairs with him, and she did. Justise bent D.B. over one of the living room couches, removed her pants, and rubbed his penis against the cheeks of her buttocks for two to three minutes. Justise then moved D.B. to another couch where he got on top of her and tried to place his penis inside her vagina. There

---

[1] On June 22, 2009, Justise appealed his sentence and conviction, but this court later dismissed the appeal with prejudice for failure to comply with the appellate rules. On September 6, 2011, we allowed a belated appeal.

[2] Justise filed a motion not to publish, which we interpret as a motion to make the case confidential as opposed to the publication of this opinion. By separate order, we deny this motion.

was no penetration. Justise then placed D.B. on his lap, placed his finger inside her vagina, and moved it around in circles. Justise told D.B. that it was going to "tingle a little bit." Tr. p. 71. Justise raised D.B. off of his lap and told her to "remember [that] this never happened." Tr. p. 72. D.B. went upstairs and cried.

A few days later, D.B. told both her aunt, Ashley Jackson ["Jackson"], and Winston what had happened. Winston informed D.B.'s mother about the molestation. When D.B. confirmed to her mother what had occurred, D.B.'s mother contacted the Indianapolis Metropolitan Police Department. D.B. was interviewed at Child Protective Services and examined by Methodist Hospital Sexual Assault Nurse Linda Kelley ["Kelley"]. Kelley noticed that D.B. showed notches or clefts on her hymen that could have been caused by something inserted into her vagina.

Detective Gregory Norris was assigned to the case. During his investigation, the detective downloaded recordings of telephone calls between Justise and Winston and Justise and D.B. while Justise was incarcerated in the Marion County Jail on other charges during June and July 2006. Many of the telephone calls made during that time period were not recorded. According to Buzz Michael, the keeper of inmate phone records at the Marion County Jail, the system failed to download approximately 90,000 phone calls due to a system wide failure. The logs indicated that the calls had been made, but the recordings did not exist. Michael explained that there was "no rhyme or reason behind which calls were lost and which calls were kept." Tr. of Pre-trial Hearing p. 17.

In October 2006, the State charged Justise with two counts of child molesting as class A felonies, three counts of sexual misconduct with a minor as class B felonies, child molesting as a class C felony, and two counts of sexual misconduct with a minor as class C felonies. Justise represented himself at the October 2008 trial. The State introduced into evidence recordings of telephone calls between Justise and D.B., which were recorded

while Justise was incarcerated in the Marion County Jail. In one of the telephone calls, D.B. confronted Justise about touching her and placing his finger in her vagina. She told him that she was not lying and quoted his comment to her that his finger in her vagina would "tingle a little bit." Ex. 18 p. 7.

Also during trial, Justise wanted to question Jackson about a phone conversation she had with D.B. According to Justise, D.B. told her aunt that she fabricated the molestation because she wanted to hide the fact that she had sexual intercourse with a boy name Jason. Justise wanted to introduce into evidence D.B.'s prior sexual history, but the trial court refused to allow him to do so because this evidence violated Indiana Evidence Rule 412 and was therefore inadmissible. Justise denied molesting his daughter.

A jury convicted Justise of the two counts of child molesting as class A felonies and one count of child molesting as a class C felony. At the sentencing hearing, the trial court merged the two class A felony convictions for double jeopardy purposes and sentenced Justise to forty-five years for the class A felony, and six years for the class C felony, with the sentences to be served consecutively, for an aggregate term of fifty-one years. Justise received permission to file a belated appeal in September 2011.

*Justise v. State,* No. 49A02-1105-CR-408, slip op. at 1–2 (Ind. Ct. App. May 22, 2012), *trans. denied.*

[3]     On direct appeal, Justise presented three issues: (1) whether his due process rights were violated when the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963); (2) whether the trial court erred in refusing to allow Justise to impeach the victim with evidence of her prior sexual history; and (3) whether there was sufficient evidence to support his conviction. A panel of this court rejected Justise's claims, holding: (1) there was

no evidence for the prosecution to suppress because the phone calls which Justise complains of were not recorded, and if there is no evidence to suppress, there is no *Brady* violation; (2) the victim's alleged sexual history does not fall into one of the enumerated exceptions of Rule 412, and therefore, the trial court did not err by excluding the challenged evidence under Rule 412; and (3) Justise's argument regarding the victim's testimony at trial was nothing more than an invitation for the court to reweigh the evidence, which the court cannot do. *Id.* at *2–3. Justise filed a petition to transfer his case to the Indiana Supreme Court, but that court denied the petition.

[4]     On January 22, 2016, Justise filed a pro se petition for post-conviction relief. In his petition, Justise claimed that (1) the State committed *Brady* violations; (2) he was denied the effective assistance of trial counsel; and (3) there was newly discovered evidence. On May 1, 2017, Justise amended his petition to add a claim of prosecutorial misconduct. The post-conviction court held an evidentiary hearing on September 21, 2017. Both parties then submitted proposed findings of fact and conclusions of law, and on May 18, 2018, the post-conviction court issued its findings of fact and conclusions of law denying Justise's petition for post-conviction relief. The post-conviction court concluded that D.B. acknowledged the allegations of inappropriate sexual contact she made against Justise, and D.B. indicated her testimony at trial was untruthful and that Justise had never touched her. The court, however, did not find D.B. credible and assigned no weight to her testimony. Further, the court held that

the issue of D.B.'s recantation was not a new issue, as it was addressed several times in Justise's Court of Appeals decision. Justise now appeals.

## Standard of Review

Our standard of review of claims that a post-conviction court erred in denying relief is well settled. That is, post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*. Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Id.* A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Id.* Thus, on appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

As required by Indiana Post-Conviction Rule 1(6), the post-conviction court entered findings of fact and conclusions of law. Therefore, we must determine if the court's findings are sufficient to support its judgment. *Manzano*, 12 N.E.3d at 325. We review the post-conviction court's factual findings under a clearly erroneous standard, i.e., we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and

reasonable inferences flowing therefrom that support the post-conviction court's decision. We do not defer to the post-conviction court's legal conclusions, which are reviewed de novo. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002).

## Discussion and Decision

[7] First, Justise complains that the post-conviction court failed to address his *Brady* violation claim and his claim that the trial court should have admitted evidence that he contends would have impeached Jackson's testimony. The State asserts that these claims are barred by res judicata or waiver. The doctrine of res judicata "prevents the repetitious litigation of that which is essentially the same dispute." *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000). Issues that were raised and decided on direct appeal are res judicata and may not be litigated again on post-conviction review. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). "[W]here an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or res judicata." *Cambridge v. State*, 468 N.E.2d 1047, 1049 (Ind. 1984).

[8] On direct appeal, Justise unsuccessfully argued that the State committed a *Brady* violation with respect to the phone calls between himself and the victim. Here, Justise raises the same *Brady* violation claim, and it is therefore barred by res judicata. *See Ben-Yisrayl*, 738 N.E.2d at 259.

[9]     Similarly, on direct appeal, Justise argued that the trial court should have allowed him to admit impeachment evidence concerning the victim's prior sexual history.[3] Justise now argues that, "Jackson should have been allowed to testify as to D.B. telling her that Justise never touched her. Proper foundation was laid for impeachment." Appellant's Br. at 3. Issues that were known and available, but not raised, on direct appeal are waived, or procedurally defaulted, and may not be raised in the post-conviction process. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002). Justise could have raised this issue on direct appeal but chose not to. Therefore, the claim is waived.

[10]    Finally, Justise argues that the post-conviction court incorrectly rejected relief on his claim of newly discovered evidence. At the post-conviction hearing, D.B. testified under oath that she had never been inappropriately touched by Justise and that Justise never did "anything physical" with her. Tr. p. 14.

[11]    In considering whether to set aside a conviction and grant a new trial on the basis of newly discovered evidence, Indiana courts apply a nine-part test:

> New evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial

---

[3] Justise does not appeal the denial of post-conviction relief on the grounds of ineffective assistance of counsel that he raised in his petition.

of the case; and (9) it will probably produce a different result at retrial.

*Kubsch v. State*, 934 N.E.2d 1138, 1145 (Ind. 2010) (quoting *Taylor v. State,* 840 N.E.2d 324, 329–30 (Ind. 2006)). These nine factors are analyzed with care, "as 'the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id.* (quoting *Taylor*, 840 N.E.2d at 330).

[12] Here, the post-conviction court concluded that the admission of the victim's testimony at a new trial would be offered as merely impeaching evidence. We agree. D.B.'s testimony at the post-conviction hearing was not new substantive evidence but was merely impeaching of what she had previously testified under oath. This testimony at the evidentiary hearing only serves to undermine her own credibility, and thus, Justise has failed to establish the fourth prong of the test.

[13] The post-conviction court also concluded that D.B.'s testimony at the post-conviction relief evidentiary hearing was not worthy of credit. The court had the opportunity to hear D.B. testify multiple times regarding the molestation. During her trial testimony which resulted in Justise's convictions, D.B. did not waver in her accusations. Additionally, the court concluded that D.B. related the same facts she testified to at trial to a forensic interviewer, Linnett Garcia, who described D.B. as "very forthcoming." Appellant's App. Vol. 2, p. 238. D.B. remained consistent in her accusation against Justise during a pretrial deposition. During a recorded pretrial jail conversation between D.B. and Justise, D.B. asked Justise specifically about the molestation. *Id.* In sum, the

court found D.B.'s testimony at the evidentiary hearing not worthy of credit as D.B.'s prior testimony was too clear, precise, and forthcoming to ignore now. Thus, Justise had failed to meet his burden of proving the seventh prong of the newly discovered evidence test. We agree with the trial court that D.B.'s testimony is not worthy of credit.

[14] Therefore, the alleged newly discovered evidence is not supportive of a different result at retrial, and there is no merit to Justise's claims. Justise's argument to the contrary is nothing more than a request for us to reweigh the evidence on appeal, which we will not do.

## Conclusion

[15] The issues Justise raised in his petition for post-conviction relief were either addressed on direct appeal, and therefore res judicata, or known and available to him at the time of his direct appeal, and therefore waived. Furthermore, Justise is not entitled to a new trial based on his claim of newly discovered evidence because D.B.'s recantation of her trial testimony was merely impeaching and because the post-conviction court determined that her testimony at the post-conviction evidentiary hearing was not credible. Accordingly, we affirm the court's denial of Justise's petition for post-conviction relief.

[16] Affirmed.

May, J., and Brown, J., concur.