## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 29 2019, 9:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Curtis Stokes
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

---

IN THE
# COURT OF APPEALS OF INDIANA

---

Curtis Stokes,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

October 29, 2019

Court of Appeals Case No.
18A-PC-2982

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-0812-PC-288158

**Mathias, Judge.**

[1] Curtis Stokes ("Stokes") appeals pro se the Marion Superior Court's order denying his petition for post-conviction relief. Stokes argues that the post-

conviction court erred when it determined that he was not subjected to ineffective assistance of trial and appellate counsel.

[2]   We affirm.

## Facts and Procedural History

[3]   The facts supporting Stokes's convictions were summarized by our court as follows:

> On December 18, 2008, Gregory Arnold, Jr., the CEO of Big Engine Entertainment Recording Studio ("the studio") in Indianapolis, was working at the studio. Also present in the studio's building that evening were: Shontez Simmons, Edriese Phillips ("Edriese"), Collin Moore, Fred Winfield, Michael Cameron, Andrew Steele, Earnest Simmons ("Earnest"), Willie Brownleee, Shantell Williams, and Arnold, Jr.'s three minor children. All of the building's occupants were spread throughout the building in separate rooms.

> At approximately 7:00 p.m., Simmons exited the studio building to smoke a cigarette, and she saw Antonio Walker ("Antonio") and Antwane Walker ("Antwane") arriving to enter the studio. On their way inside, Antonio and Antwane greeted Simmons, whom they knew. Once inside, they looked around for a minute or so and exited the building. A few minutes later, Antonio and Antwane returned accompanied by Stokes, Johnnie Stokes ("Johnnie"), Terry Lynem, and a man named Marcus. All of the men entered the studio building.

> Once inside, Antonio and Antwane entered a room where they found Arnold, Jr., Winfield, Williams, and Steele. Arnold, Jr. greeted the men, whom he knew personally, and Antonio greeted Steele and asked Steele to exit the room with him. Steele followed Antonio outside of the room, and Antwane was waiting outside the room. At that point, Antonio drew a gun from his

person and placed it forcefully against Steele's face and said, "Get down. You know what this is." Meanwhile, in another area of the studio, Lynem and Marcus grabbed Edriese and demanded his money at gunpoint. Marcus took $200 from one of Edriese's pockets. Also, one or more of the perpetrators ordered Moore to "get down" when gunfire erupted. Moore was shot in the abdomen, but he was not robbed. After approximately six to twelve shots were fired, the Walkers and other perpetrators fled the scene.

The State charged Stokes and his codefendants with eighteen felony counts, including robbery, attempted robbery, unlawful possession of a firearm by a serious violent felon, battery, and criminal recklessness. During trial, several jurors inadvertently saw documents making reference to Stokes' incarceration pending trial, and Stokes moved for a mistrial. The trial court denied that motion. The trial court granted Stokes' motions for directed verdicts on three attempted robbery counts. And a jury found Stokes guilty of six counts of attempted robbery, one as a Class A felony and five as Class B felonies; robbery, as a Class B felony; criminal recklessness, as a Class C felony; carrying a handgun without a license, as a Class A misdemeanor; and of being an habitual offender. The trial court entered judgment accordingly and sentenced Stokes to an aggregate term of eighty-eight years.

*Stokes v. State*, 919 N.E.2d 1240, 1242–43 (Ind. Ct. App. 2010), *trans. denied*

(record citations and footnote omitted).

[4]     Stokes appealed his convictions and argued 1) that the trial court abused its discretion when it denied his motion for a mistrial after jurors learned that Stokes and his codefendants were incarcerated pending trial, and 2) that the evidence was insufficient to support each of his Class A felony attempted robbery conviction related to Moore, his five Class B felony attempted robbery

convictions related to Arnold, Jr., Earnest, Steele, Winfield, and Williams, and his Class B felony robbery conviction related to Phillips. Our court concluded that the trial court did not abuse its discretion when it denied Stokes's motion for a mistrial. However, this court concluded that the evidence was only sufficient to support Stokes's Class A attempted robbery conviction of Moore, Class B felony robbery conviction of Phillips, and the Class B felony attempted robbery of Steele. As to the other attempted robbery convictions, our court held that there was no evidence that Stokes or his co-defendants had the specific intent to rob Arnold, Jr., Winfield, or Williams, and there was no evidence that Stokes or his co-defendants attempted to rob Earnest. Therefore, our court reversed those four attempted robbery convictions. This result did not affect Stokes's eighty-eight-year aggregate sentence because his sentences on those four counts were ordered to be served concurrent with the sentences for his remaining convictions.

[5] On January 2, 2013, Stokes filed a petition for post-conviction relief. The State Public Defender represented Stokes for approximately nine months but was allowed to withdraw its appearance on September 11, 2013. Stokes's first petition was dismissed without prejudice on January 15, 2014. Approximately one month later, Stokes filed a second petition, which he was allowed to withdraw on September 18, 2015. Stokes filed his third petition for post-conviction relief on August 11, 2016.

[6] The post-conviction court held evidentiary hearings on Stokes's petition on December 8, 2017, and February 20, 2018. Stokes's trial and appellate counsel

testified at the hearing. Stokes's ineffective assistance claims centered around his Class A felony attempted robbery conviction of Moore.

[7] On November 8, 2018, the post-conviction court issued an order denying Stokes's petition for post-conviction relief. The trial court concluded that trial counsel was not ineffective after finding in pertinent part that

> Stokes initially claims that he received ineffective assistance because his trial counsel stipulated to the testimony of a victim. . . .
>
> During the evidentiary hearings, Stokes pointed to a stipulation that his trial counsel supposedly made regarding State's witness, Collin Moore. . . .
>
> At the evidentiary hearing, attorney Rader (Bogar) testified that she did not specifically remember making any stipulations in the trial, but that generally stipulations were a common way to streamline trials, so as to focus on central, contested issues. On this issue, the Court finds that Stokes has not introduced the specific terms of any such express stipulation, nor has he introduced the witness statement to which he referred, and he has not introduced the transcript of the evidence, so that the Court cannot determine the context, or the gravity or the appropriateness of any stipulation, if one actually occurred. Without more, the Court also cannot evaluate any potential confrontation issue, and consequently, the Court must find that on the issue, Stokes has failed to meet his burden of proof.
>
> ***
>
> Stokes also claims that his trial counsel was ineffective because she did not move to dismiss the charges against him at the outset of the case. . . . In making this argument, Stokes appears to be focused on a notation in the Case Chronology dated December 21, 2008, which seems to indicate that no probable cause was

found, and the defendant was ordered to be released. However, the court notes that [the] second and third entries for the same day, indicate that the Court made a probable cause determination and a bond was set. Additionally, the Court notes that the Case Chronology shows that on December 23, 2008 the Presiding Judge, conducted an initial hearing, and specifically found probable cause. Accordingly, the Court finds that Stokes has simply misinterpreted the Case Chronology, and his argument fails for this reason, alone.

Appellant's App. Vol. 3, pp. 137–139.

[8] The trial court also concluded that Stokes's appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence on his Class A felony attempted robbery conviction. The trial court specifically found that

Stokes's failure to admit, as post-conviction exhibits, the record of proceedings and the appellate briefs from his direct appeal make a complete review of this issue virtually impossible. Although somewhat ambiguous on this specific issue, his appellate attorney's testimony at the evidentiary [hearing] seems to at least indicate her belief that she did raise the issue. The Court of Appeals opinion is also somewhat contradictory on this narrow point, in that on the one hand the opinion states that Stokes['s] claim was "the evidence is insufficient to support each of his five Class B felony attempted robbery convictions and his robbery conviction," *Stokes* at 1244[,] but on the other hand, the Court of Appeals carefully and separately reviewed the sufficiency of the evidence supporting the A felony attempted robbery of victim Colin Moore, and found, "we hold that the evidence is sufficient to prove that Stokes was an accomplice to the attempted robbery of Moore. The evidence shows that Moore was in a hallway of the recording studio when he was ordered to "get down" and shot in the . . . [omission in the original]. The fact that he was singled out and directly ordered to "get down"

supports a reasonable inference that the perpetrators intended to rob him, but were interrupted when gunfire erupted. We hold that the evidence is sufficient to support Stokes'[s] attempted robbery of Moore." *Stokes at* 1248. Thus the inescapable conclusion is that either Stokes's appellate attorney did raise the issue, or even if the Court of Appeals reviewed the issue, *sua sponte*, then it is difficult to see how the result would have been different if appellate counsel raised the same issue that was rejected by the court. And thus this Court must conclude that Stokes has failed to meet his burden of proof of this issue, either because he is factually incorrect, or because raising the argument would have been meritless, *Vaughn, supra*.

The Court is well aware, that [] [Stokes's] arguments are, [] most likely motivated by the apparent disparate treatment accorded to him and his [co-defendants] in their direct appeals. [Stokes's] four [co-defendants] appealed their convictions . . . A reading of these appellate court[] opinions shows that the results are somewhat diverse and uneven. . . .

In the present Post-Conviction relief context, Stoke[s]'s argument is simple and clear. He assumes that his trial counsel did not raise the sufficiency of the evidence on the A felony attempted robbery count, and he further contends that since one appellate court panel found insufficient evidence [] on that count, his appellate counsel was necessarily ineffective, because she did not also raise the issue or did not achieve the same result. . . .

Appellant's App. pp. 141–145. The post-conviction court ultimately concluded that appellate counsel made strategic choices that did not fall below any objective standard of reasonableness. *Id.* at 146–147.

[9]     Stokes now appeals pro se the denial of his petition for post-conviction relief.

# Standard of Review

[10] Our standard of review of claims that a post-conviction court erred in denying relief is well settled. That is, post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted), *trans. denied.* Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Id.* A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Thus, on appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

[11] As required by Indiana Post-Conviction Rule 1(6), the post-conviction court entered findings of fact and conclusions of law. Therefore, we must determine if the court's findings are sufficient to support its judgment. *Id.* We review the post-conviction court's factual findings under a clearly erroneous standard, i.e., we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.* We do not defer to the post-conviction court's legal conclusions, which are reviewed de novo. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002).

## I.  *Ineffective Assistance of Trial Counsel*

Stokes argues that his trial counsel was ineffective. In *Timberlake v. State*, our supreme court summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed.

[753 N.E.2d 591, 603 (Ind. 2001)](#) (citations and quotations omitted).

[13]     First, Stokes argues that his trial counsel was ineffective for stipulating to the admission of Collin Moore's statement. Moore was shot during the robbery, and as a result, Stokes was convicted of Class A felony attempted robbery.

[14]     Stokes did not introduce the record of his criminal trial into evidence.[1] Therefore, a copy of the stipulation has not been included in the record in the post-conviction proceedings. Stokes's trial counsel had no specific recollection of the stipulation.[2] Tr. p. 8. Stokes introduced, and the post-conviction court

---

[1] In his brief, Stokes claims that "[d]uring one of the hearings that was scheduled and continued, the Court took judicial notice of its records and informed Stokes that the trial record would be considered." Appellant's Br. at 12. There is no evidence in the record to support this claim, and the trial court found otherwise. *See* Appellant's App. Vol. 3, p. 138.

[2] Stokes's co-defendant Lynem raised this same issue in his petition for post-conviction relief, which the post-conviction court denied. Lynem appealed, and our court engaged in a discussion of the stipulation in a nonpublished memorandum decision as follows:

> [The post-conviction court] found that Moore was unable to testify at trial; "[i]n lieu of his live testimony, the trial counsels and the State entered into a joint stipulation regarding his testimony" admitted at trial as State's Exhibit 75; the stipulation indicated Moore would have testified that he was present at the incident at the studio, during which he was ordered to the ground, heard multiple gunshots, and suffered a gunshot wound; and the stipulation also provided that no property was taken from Moore and he was unable to identify any of the people who perpetrated the crime. The court found "it is apparent that entering into this stipulation was trial strategy that was pursued by all five attorneys who represented the defendants in the case." It found the stipulation was "a reasonable trial strategy which mitigated as much risk as was possible in the circumstances," the record indicates Moore was unavailable "primarily due to health issues directly stemming from the crimes," and "[f]rom a defense standpoint, ... the stipulation as entered, presented his probable testimony by which he averred to the obvious fact that he was injured in the incident, but while also acknowledging that he was unable to identify any of the [sic] also while removing the specter of possibly emotional impact of video testimony from a paralyzed crime victim."

admitted, Moore's statement to the police and the testimony of the detective who took the statement. Moore's statement does not include any evidence exonerating Stokes as he claims in his brief.

[15] Specifically, the investigating detective did not ask Moore if he knew Stokes or whether Stokes participated in the robbery. Moore told the detective that he did not know how many men participated in the offense. He stated that he laid down on the ground of the hallway, covered his head, and faced the wall. He tried not to look at the suspects because they had guns. He did not recognize any of the suspects that he saw. The detective then showed Moore several photo arrays. Moore recognized individuals in the photo arrays but stated that those individuals were not the persons who committed the crimes at the recording studio on the date he was shot. Ex. Vol., Petitioner's Ex. A. From Moore's statement, it is reasonable to infer that Moore did not see every individual involved in the commission of the offense.

[16] Stokes's claim that his trial counsel violated his right to confrontation by stipulating to Moore's testimony cannot be addressed because he failed to introduce his criminal trial record into evidence. Without that record, we are left with Moore's statement to the investigating detective, which does not support Stokes's claims that he was prejudiced. The post-conviction court

Lynem v. State, 18A-PC-1028, 2019 WL 2588282 *3 (Ind. Ct. App. June 25, 2019) (record citations omitted). Our court affirmed the post-conviction court's finding that Lynem was not subjected to ineffective assistance of trial counsel for stipulating to Moore's testimony.

properly found that "the Court cannot determine the context, or the gravity or the appropriateness of any stipulation, if one actually occurred. Without more, the Court also cannot evaluate any potential confrontation issue, and consequently" Stokes has not met his burden of proving ineffective assistance of trial counsel. *See* Appellant's App. Vol. 3, p. 138.

[17] Stokes also complains that his trial counsel was ineffective because she failed to file a motion to dismiss the charges based on a lack of probable cause. However, as the post-conviction court noted, in support of this argument, Stokes cites to an entry in the Chronological Case Summary that Stokes has misinterpreted. It is clear from the entries that follow that a judicial officer found that there was probable cause to arrest Stokes for the charged offenses. Appellant's App. Vol. 2, p. 3.

[18] For all of these reasons, we conclude that Stokes has not met his burden of proving that his trial counsel was ineffective.

## II. Ineffective Assistance of Appellate Counsel

[19] Stokes also claims that the post-conviction court clearly erred by rejecting his claim of ineffective assistance of appellate counsel. When we review claims of ineffective assistance of appellate counsel, we use the same standard we apply to claims of ineffective assistance of trial counsel, i.e., the petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been

different. *Manzano*, 12 N.E.3d at 329 (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)).

[20] We also reiterate that when the claim of deficient performance is one of inadequate presentation of issues, the claim of ineffective assistance almost always fails. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). As explained by the *Bieghler* court:

> First, these claims [of inadequate presentation of issues] essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision. Thus, this kind of ineffectiveness claim, as compared to the others mentioned, most implicates concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction.

> Second, an Indiana appellate court is not limited in its review of issues to the facts and cases cited and arguments made by the appellant's counsel. We commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party. While impressive appellate advocacy can influence the decisions appellate judges make and does make our task easier, a less than top notch performance does not necessarily prevent us from appreciating the full measure of an appellant's claim, or amount to a breakdown in the adversarial process that our system counts on to produce just results.

> * * *

> When the issues presented by an attorney are analyzed, researched, discussed, and decided by an appellate court, deference should be afforded both to the attorney's professional

ability and the appellate judges' ability to recognize a meritorious argument.

For these reasons, an ineffectiveness challenge resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance. Judicial scrutiny of counsel's performance, already highly deferential, is properly at its highest. Relief is only appropriate when the appellate court is confident it would have ruled differently.

*Id.* at 195–96 (emphasis added) (citations and internal quotations omitted).

[21] In his direct appeal, our court addressed Stokes's claims of insufficient evidence to support his attempted robbery convictions. *See Stokes*, 919 N.E.2d at 1245–48. This court concluded that the evidence was sufficient to prove that Stokes was an accomplice to the attempted robbery of Moore.[3] Specifically, we observed that

---

[3] Co-defendant Antwane Walker raised the same claims in his direct appeal. As in Stokes's direct appeal, our court affirmed his attempted robbery conviction related to victim Moore but reversed the Class B felony attempted robbery convictions related to victims Arnold Jr., Winfield, Williams, and Phillips. *See Antwane Walker v. State*, 49A02-0905-CR-432, 2010 WL 1462065 at *7–10 (Ind. Ct. App. April 13, 2010), *trans. denied*. Only Johnnie Stokes received relief on direct appeal with regard to the Class A felony attempted robbery conviction. Chief Judge Vaidik dissented from that opinion and would have affirmed the conviction for the attempted robbery of Moore. *See Johnnie Stokes v. State*, 922 N.E.2d 758 (Ind. Ct. App. 2010), *trans. denied*. Co-defendant Antwane Walker did not challenge the sufficiency of the evidence in his direct appeal. In post-conviction proceedings, he argued that his appellate counsel was ineffective for failing to raise the issue. The trial court denied his petition, and our court affirmed. *See Antwane Walker v. State*, No. 49A02-1112-PC-1173, 2012 WL 2928474 (Ind. Ct. App. July 19, 2012), *trans. denied*. In his direct appeal, co-defendant Lynem unsuccessfully claimed that victim Edriese Phillips's testimony was incredibly dubious and inconsistent. In his post-conviction proceedings, he argued that appellate counsel "was ineffective in his decision not to broaden the insufficiency of the evidence argument as to all of his attempted robbery charges[.]" *Lynem v. State*, 18A-PC-1028, 2019 WL 2588282 (Ind. Ct. App. June 25, 2019). The trial court denied his petition for post-conviction relief, and our court affirmed after concluding that it was not unreasonable "for his appellate counsel to conclude that the evidence supports at least a reasonable inference that the co-defendants had intent to rob Arnold Jr., Winfield, Williams, Earnest Phillips, and Moore[.]" *Id.* at *7.

[t]he evidence shows that Moore was in a hallway of the recording studio when he was ordered to "get down" and shot in the abdomen. The fact that he was singled out and directly ordered to "get down" supports a reasonable inference that the perpetrators intended to rob him, but were interrupted when gunfire erupted. We hold that the evidence is sufficient to support Stokes' attempted robbery of Moore.

*Id.* at 1248.

[22] The insufficient evidence claim was therefore raised and addressed by our court in Stokes's direct appeal. Stokes argues that his appellate counsel must have been ineffective because another panel of court concluded that co-defendant Johnnie Stokes's Class A felony attempted robbery conviction relating to victim Moore was not supported by sufficient evidence. Chief Judge Vaidik dissented and would have affirmed the conviction. He also argues that our court should revisit the issue to correct a manifest injustice. *See* Appellant's Br. at 14.

[23] Our court does not follow horizontal stare decisis. Therefore, "each panel of this Court has coequal authority on an issue and considers any previous decisions by other panels but is not *bound* by those decisions." *Smith v. State*, 21 N.E.3d 121, 126 (Ind. Ct. App. 2014) (emphasis in original). This court's opinion in Stokes's direct appeal was decided before another panel of our court reversed Johnnie's Stokes's Class A felony attempted murder conviction. *See Johnnie Stokes*, 922 N.E.2d at 764. Our supreme court denied transfer in both cases, implicitly declining to address the opposite results reached by two panels of our court. While Stokes is understandably frustrated that Johnnie Stokes obtained the precise relief that he also sought on direct appeal, we cannot

conclude that the differing results constitute manifest injustice or that Stokes was subjected to ineffective assistance of appellate counsel.

## Conclusion

Stokes has not established that he was subjected to ineffective assistance of trial or appellate counsel. We therefore affirm the trial court's order denying Stokes's petition for post-conviction relief.

Affirmed.

Robb, J., and Pyle, J., concur.